UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GENERAC POWER SYSTEMS, INC., a Wisconsin corporation, <br><br> Plaintiff, <br><br> vs. <br><br> BRAD EVERETT <br><br> Defendant. | Case No.: 2014 CV 6357 <br><br> JURY DEMAND ON LEGAL MATTERS |

## VERIFIED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

NOW COMES the Plaintiff, Generac Power Systems, Inc. ("Generac"), a Wisconsin corporation, by and through its attorneys, Faraci & Faraci, complains of the Defendant, Brad Everett ("Everett"), as follows:

### PARTIES

1. Plaintiff, Generac, is a Wisconsin corporation, having its principal place of business in Waukesha, Wisconsin.

2. Defendant, Brad Everett, is a citizen of the state of Illinois, residing at 21 W675 Huntington Rd., Glen Ellyn, DuPage County, Illinois.

### JURISDICTION AND VENUE

3. This court has jurisdiction over the subject matter of this case pursuant to 28 USC §1332 as there exists a complete diversity between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

4. Venue properly lies in the Northern District of Illinois pursuant to 28 USC §1391 as the Defendant, Everett, is a resident of the Northern District of Illinois.

1

## FACTS APPLICABLE TO ALL COUNTS

### Background

5. Generac is engaged in the highly competitive business of manufacturing and selling various types of products, transfer switches, generators, motors, equipment, and other related parts. It services commercial customers throughout the United States, as well as internationally.

6. Generac has developed and employs several specialized methods, techniques, designs, technologies, and processes for the manufacture and sale of various products, transfer switches, generators, motors, equipment, and other related parts that are sufficiently secret that Generac derives economic value, both actual and potential, from them not being generally known to others who can obtain economic value from their disclosure or use. More specifically, Generac's trade secret information consists of the specialized design and manufacture methods of its transfer switches, customer lists and information, and specific business, marketing, and sales strategies for such transfer switches.

7. Generac's specialized methods, designs, and strategies are the subject of efforts by Generac to maintain their secrecy or confidentiality that are reasonable under the circumstances, such as keeping such information password protected, limiting the amount of employees that had access to such information, and requiring confidentiality as a condition for employment.

### Everett's Employment with GENERAC

8. Everett was first employed by Generac on or about November 28, 2011, with the intent work on behalf of Generac from his home in Illinois.

9. Everett was hired and served as a power solutions manager for Generac.

9. Everett was hired and served as a power solutions manager for Generac.

10. While at Generac, Everett serviced customers throughout the entire Midwest region of the United States.

11. As a power solutions manager, Everett was responsible for selling and overseeing the sale of certain Generac transfer switches and developing a relationship with customers and suppliers. Everett was also a line of communication between customers and Generac with regard to such work.

12. As part of Everett's training for his position as power solutions manager, Everett was taught certain specialized business, marketing, and sales strategies, and specialized design and manufacture methods for Generac's transfer switches. Everett was also given access to Generac's customer lists and information.

13. Said specialized business, marketing, and sales strategies, specialized design and manufacture methods for Generac's transfer switches, and customer lists and information are not divulged to the public and are not distributed to all Generac employees.

14. As a condition of Everett's employment with Generac, on or about November 28, 2011, Everett signed an "Employee Nondisclosure and Noncompete Agreement" (the "Agreement"), a copy of which is attached hereto and incorporated herein as Exhibit A.

15. Pursuant to the Agreement, Everett agreed for the term of the Agreement and one year after the end of his employment not to compete with Generac.

16. Specifically, pursuant to Section 4 of the Agreement, Everett agreed to the following:

"For a period of one (1) year from the date of the termination of employment, Employee agrees to not render services directly or indirectly for Employee's own account or to any person, partnership, or corporation in a line of business competitive with Generac Power Systems, Inc. in North America. It is understood, however, that Employee may accept employment with a diversified company, so long as [Employee's] employment pertains

solely to that part of its business, which is not in competition with any business of Generac Power Systems, Inc."

17. The promises set forth in Section 4 of the Agreement, and paragraph 16 of this Complaint are referred to collectively as the "Restrictive Covenants."

18. Pursuant to the Agreement, Everett further agreed that he would keep and hold all confidential information of Generac in strict confidence.

19. Specifically, pursuant to Section 2 of the Agreement, Everett agreed to:

"Except as necessary to perform Employee's employment duties for employer, Employee shall not, either directly of indirectly, as an agent, employee, consultant, partner, shareholder or in any other capacity, use the Confidential Information or disclose it to anyone including but not limited to, employees, former employees at any time, either during or subsequent to Employee's employment by Employer, without the prior written consent of a duly authorized officer of Employer. This paragraph shall not apply to Employee's disclosure, after termination of his employment with Employer, of Confidential Information which becomes generally known to the public other than as a result of Employee's breach of this Agreement."

20. In 2013, Generac grossed over $3,000,000.00 from the sale of Generac transfer switches, which compete directly with GE.

21. On or about June 27, 2014, Everett resigned from Generac.

### Everett's Breaches of His Agreement

22. Subsequent to Everett's resignation from Generac, he began working for General Electric Industrial Power a/k/a GE Zenith Controls ("GE"), in a similar position ("regional sales manager") as he worked with Generac, selling GE/Zenith transfer switches.

23. GE is a direct competitor of Generac, and Everett's work with GE is directly competing with Generac.

24. On July 23, 2014, after confirming that Everett has been employed by GE and selling GE products that directly compete with Generac's products, Generac, by and through its counsel, sent Everett a written reminder of the contractual duties which he owed and

continues to owe to Generac, and demanded that Everett cease and desist from violating the Restrictive Covenants of his Agreement with Generac, a copy of which is attached hereto and incorporated herein as Exhibit B.

25. Despite the clear and unambiguous language of the cease and desist letter of July 23, 2014, Everett has shown no intention to abide by the contractual restrictions and common law prohibitions detailed in Generac's cease and desist letter.

## COUNT I
## BREACH OF CONTRACT

1-25. Generac realleges and incorporates paragraphs 1 through 25 as if fully restated herein.

26. There is a binding and enforceable contract between Generac and Everett. The terms of that contract are contained in the express terms of the Agreement. (see Exhibit A)

27. Generac has performed all the conditions on its part under the terms of the Agreement.

    **A. Everett's Breach of the Provisions Relating to Competition with the Business of Generac.**

28. By the terms of the Agreement, for a period of one year from the termination of his employment with Generac, Everett agreed not to compete with Generac within the United States from any location at which Everett provided services on behalf of Generac during the term of his employment.

29. In violation of the Agreement, Everett has accepted employment with GE selling transfer switches, and is competing with the business of Generac in Chicago, Illinois, and surrounding areas.

    **B. Generac is Entitled to Equitable Relief.**

30. Everett's breaches and threatened breaches are causing, and will cause, irreparable harm to Generac.

31. Generac does not have an adequate remedy at law.

32. Generac is entitled to injunctive relief pursuant to F.R.C.P. 65.

33. Generac is entitled to declaratory relief pursuant to 28 U.S.C. § 2201.

**WHEREFORE,** the Plaintiff, Generac Power Systems, Inc., prays for the following relief:

A. An order declaring Everett's employment with GE, which is engaged in a directly competitive business with Generac, and Everett's position selling similar transfer switches within one year of his employment with Generac and in direct competition with Generac, is a breach of contract;

B. A temporary, preliminary and/or permanent injunction maintaining the status quo, and for a period of one year from the date of the injunction, prohibiting Everett from directly competing with Generac by selling transfer switches in direct competition with Generac;

C. A judgment against Everett in the amount of damages sustained by Generac as a consequence of Everett's breaches of contract, together with reasonable attorney's fees, prejudgment interest and costs; and

D. Such further relief as the Court deems proper and just.

## <u>COUNT II</u>
## VIOLATIONS OF THE ILLINOIS TRADE SECRETS ACT

1-25. Generac realleges and incorporates paragraphs 1 through 25 as if fully restated herein.

34. Generac has developed and employs several specialized design and manufacture methods of its transfer switches, specific business, marketing, and sales strategies for such transfer switches, and specific customer lists and information ("confidential information"), which are exclusive to Generac and not generally known outside Generac.

35. Generac has engaged in reasonable efforts to protect and maintain the secrecy of its confidential information by limiting access to the information through limited distribution

of training materials, requiring employees of Generac with knowledge of its confidential information to execute an agreement to protect the integrity of that information, and protecting such information with other means, such as password protection.

36. Generac derives actual and potential economic value from its confidential information, and from such information not being generally known to other persons or entities who can obtain economic value from its disclosure or use.

37. Generac's confidential information constitutes "Trade Secrets" as defined by the Illinois Trade Secret Act ("ITSA"), 765 ILCS 1065/1, *et seq.*

38. The specialized design and manufacture methods of Generac's transfer switches, customer lists and information, and specific business, marketing, and sales strategies for such transfer switches were acquired by Everett through his employment with Generac.

39. Everett is employed by a business in direct competition with Generac.

40. It is inevitable that Everett will use or rely upon the trade secrets and confidential information that he obtained while working for Generac.

41. Everett's inevitable unauthorized use or disclosure of Generac's confidential and trade secret information, actual or threatened, violates the ITSA, 765 ILCS 1065/1 *et seq.*

**WHEREFORE**, the Plaintiff, Generac Power Systems, Inc., prays for the following relief:

A. An order declaring:

(1) Generac's specialized design and manufacture methods of its transfer switches, customer lists and information, and specific business, marketing, and sales strategies for such transfer switches constitute "trade secrets" as defined by the ITSA, 765 ILCS 1065/2; and

(2) Everett's disclosure and use of Generac's trade secrets is inevitable and in violation of the ITSA, 765 ILCS 1065/1 *et seq.*.

B. A temporary, preliminary and/or permanent injunction maintaining the status quo and prohibiting Everett and all persons acting in concert with him from disclosing and/or using Generac's specialized design and manufacture methods of its transfer switches, customer lists and information, and specific business, marketing, and sales strategies for such transfer switches

C. A judgment against Everett in the amount of damages sustained by Generac as a consequence of Everett's misappropriation of Generac's trade secrets, together with exemplary damages as provided for by the ITSA, 765 ILCS 1065/4(b) and reasonable attorney's fees as provided for by the ITSA, 765 ILCS 1065/5.

Respectfully submitted,

Generac Power Solutions, Inc.,
a Wisconsin corporation

By: /s/ Peter S. Faraci
      One of Its Attorneys

Peter S. Faraci (ARDC #6230899)
Faraci & Faraci
3 S. Prospect Ave., Suite 4
Park Ridge, Illinois 60068
Telephone: 847-292-0199
Facsimile: 847-292-0054
Faraci@faracilaw.com

## DECLARATION OF ROD ROGAHN

I, Rod Rogahn, declare under penalty of perjury that I am the ___V.P. of Litigation___ for Generac Power Systems, Inc., that I have read the foregoing Verified Complaint for Injunctive and Other Relief, and the statements of fact within the following Paragraphs of the Verified Complaint are true and correct,

I declare under penalty of perjury that the foregoing is true and correct. Executed at on ___Aug. 18,___ ,2014.

_____
ROD ROGAHN

9